

# U.S. MERIT SYSTEMS PROTECTION BOARD

### Office of the Clerk of the Board

**1615 M Street, N.W.**
**Washington, D.C.  20419-0002**

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

2023-1998


# ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of Christine L. Hill *v.* Department of Defense, MSPB Docket No. SF-0752-16-0127-I-1, and that the administrative record is under my official custody and control on this date

on file in this Board

| | |
|---|---|
| July 19, 2023 | /s/ for |
| Date | Jennifer Everling |
| | Acting Clerk of the Board |

CERTIFICATE OF SERVICE

I hereby certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Counsel For Petitioner</u>

Electronic Mail        James H. Shoemaker, Jr., Esq.
(via mspb@mspb.gov) jshoemaker@pwhd.com

<u>Respondent</u>

Electronic Mail        Martin F. Hockey, Jr., Acting Director
(via mspb@mspb.gov) Commercial Litigation Branch
                     Civil Division Classification Unit
                     U.S. Department of Justice
                     c/o Thee Matthews
                     thee.matthews@usdoj.gov

| July 19, 2023 | /s/ |
|---|---|
| (Date) | Markita Bryant |
| | Paralegal Specialist |

INDEX

CHRISTINE L. HILL

v.

DEPARTMENT OF DEFENSE

MSPB Docket No.   SF-0752-16-0127-I-1

IA-REFORM ACT MERIT

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Initial Appeal | November 23, 2015 |
| 2 | 1 | MSPB - Acknowledgment Order | November 24, 2015 |
| 3 | 1 | Agency - Change of e-Filing Status | November 24, 2015 |
| 4 | 1 | Agency - Request to Extend Time to File Agency File | December 08, 2015 |
| 5 | 1 | MSPB - Time Extension Request Order | December 09, 2015 |
| 6 | 1 | Agency - Response File | December 22, 2015 |
| 7 | 1 | Appellant - Request for Hearing | December 24, 2015 |
| 8 | 1 | MSPB - Hearing Order | December 30, 2015 |
| 9 | 1 | Appellant - Change of e-Filing Status | January 13, 2016 |
| 10 | 1 | Agency - Representative Addition | January 19, 2016 |
| 11 | 1 | Agency - VTC Locations for Hearing | January 19, 2016 |
| 12 | 1 | Agency - Prehearing Submission | January 25, 2016 |
| 13 | 1 | Appellant - Motion for an Extension of Time and to Compel Full and Complete Resp | January 25, 2016 |
| 14 | 1 | Agency - Response to Motion to Compel | January 28, 2016 |
| 15 | 1 | Appellant - Reply in Support of Motion to Compel and for Extension | January 30, 2016 |
| 16 | 1 | MSPB - Order on Motion to Compel | February 04, 2016 |
| 17 | 2 | Agency - Response to Order on Motion to Compel and Order Suspending Appeal dated 2/5/2016 | February 17, 2016 |
| 18 | 2 | Appellant - Second Motion to Compel and for Sanctions | February 17, 2016 |

| 19 | 2 | Agency - Response to Appellant Representative's Second Motion to Com dated 2/17/2016 | February 22, 2016 |
| 20 | 2 | Appellant - Reply in Support of Motion to Compel and Sanctions | February 23, 2016 |
| 21 | 2 | Appellant - Motion for Summary Judgment | February 24, 2016 |
| 22 | 3-4 | Appellant - Declaration in Support of Motion for Summary Judgment and Attachments | February 24, 2016 |
| 23 | 5 | MSPB - Order Denying Motion for Summary Judgment | February 24, 2016 |
| 24 | 5 | Appellant - Dr. Christine Hill's Prehearing Statement | February 29, 2016 |
| 25 | 5 | Appellant - Change of e-Filing Status | February 29, 2016 |
| 26 | 5 | Agency - Supplemental Pre-hearing Submission | March 17, 2016 |
| 27 | 6 | Agency - Exhibit 33, Agency Supplemental Pre-hearing | March 17, 2016 |
| 28 | 6 | Appellant - Motion to Exclude | March 21, 2016 |
| 29 | 6 | Appellant - Documents in Support of Motion to Exclude | March 21, 2016 |
| 30 | 6 | Agency - Agreement with Hearing Dates | March 25, 2016 |
| 31 | 6 | MSPB - Summary of Telephonic Prehearing Conference | March 28, 2016 |
| 32 | 6 | Appellant - Motion to Withdraw Affirmative Defenses Related Discrimination and R | March 31, 2016 |
| 33 | 6 | Appellant - Motion to Facilitate Witness Testimony | April 27, 2016 |
| 34 | 6 | Appellant - Prehearing Statement | April 28, 2016 |
| 35 | 7 | MSPB - Recording of May 2, 2016, Hearing | May 02, 2016 |
| 36 | 1 | MSPB - Recording May 3, 2016, Hearing | May 03, 2016 |
| 37 | 1 | MSPB - Recording May 4, 2016, Hearing | May 04, 2016 |
| 38 | 1 | MSPB - Recording May 5, 2016, Hearing | May 05, 2016 |
| 39 | 6 | Appellant - Dr. Christine Hill's Closing Argument | June 06, 2016 |
| 40 | 6 | MSPB - Document Rejection Form | August 19, 2016 |
| 41 | 6 | MSPB - Initial Decision | August 22, 2016 |

| 42 | 6 | MSPB - Certificate of Service | August 22, 2016 |

**IN A SEPARATE FOLDER**

| | MSPB - Hearing Authentication/Speaker Sheet - May 2, 2016 | May 02, 2016 |
| | MSPB - Hearing Transcript for May 2, 2016 | May 02, 2016 |
| | MSPB - Hearing Authentication/Speaker Sheet - May 3, 2016 | May 03, 2016 |
| | MSPB - Hearing Transcript for May 3, 2016 | May 03, 2016 |
| | MSPB - Hearing Authentication/Speaker Sheet - May 4, 2016 | May 04, 2016 |
| | MSPB - Hearing Transcript for May 4, 2016 | May 04, 2016 |
| | MSPB - Hearing Authentication/Speaker Sheet - May 5, 2016 | May 05, 2016 |
| | MSPB - Hearing Transcript for May 5, 2016 | May 05, 2016 |

INDEX                                                                    Page 1 of 1

CHRISTINE L. HILL

v.

DEPARTMENT OF DEFENSE

MSPB Docket No.   SF-0752-16-0127-I-1

IA-REFORM ACT MERIT - PETITION FOR REVIEW

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Request for Extension of Time to File PFR | September 14, 2016 |
| 2 | 1 | MSPB - Extension of Time Order | September 15, 2016 |
| 3 | 1 | Appellant - Request for Extension of Time to File PFR | October 13, 2016 |
| 4 | 1 | MSPB - Extension of Time Order | October 14, 2016 |
| 5 | 1 | Appellant - Petition for Review | November 15, 2016 |
| 6 | 1 | MSPB - Petition For Review Acknowledgment Letter | November 22, 2016 |
| 7 | 1 | Agency - Response to Appellant's Petition for Review dated 11/15/2016 | December 09, 2016 |
| 8 | 1 | Appellant - Reply In Support Of Petition For Review | December 20, 2016 |
| 9 | 1 | Agency - Agency Representative Addition | December 06, 2021 |
| 10 | 1 | MSPB - Final Order | April 13, 2023 |
| 11 | 1 | MSPB - Certificate of Service | April 13, 2023 |

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## WESTERN REGIONAL OFFICE

| | |
|---|---|
| CHRISTINE L. HILL,<br>Appellant, | DOCKET NUMBER<br>SF-0752-16-0127-I-1 |
| v. | |
| DEPARTMENT OF DEFENSE,<br>Agency. | DATE: August 22, 2016 |

Bradley R. Marshall, Charleston, South Carolina, for the appellant.

Douglas W. Frison, Esquire, APO/FPO Pacific, for the agency.

**BEFORE**
Anthony L. Ellison
Administrative Judge

## INITIAL DECISION

### INTRODUCTION

On November 23, 2015, the appellant timely filed an appeal of the agency's action demoting her from the position of Supervisory Education Program Administrator (Assistant Superintendent), with the Department of Defense Education Activity (DODEA), Yokota Air Base, Japan, to that of Teacher at Fort Bragg, North Carolina, effective November 20, 2015. Initial Appeal File (IAF), Tab 1. The Board has jurisdiction over such an appeal under 5 U.S.C. § 7701(a). A hearing was held from May 2 through May 5, 2016. For the following reasons, the agency's action is AFFIRMED.

## ANALYSIS AND FINDINGS

The Department of Defense Dependents Schools (DoDDS) is the international division of DoDEA and was established to provide a free public education through secondary school for military dependents in foreign overseas locations. DoDDS-Pacific operates schools on the United States military installations located in the countries of Japan and Korea and serves school-age children in three separate districts: Japan, Okinawa, and Korea. Each District is led by a District Superintendent. This case arose in the Japan District, at the Japan District Superintendent's Office ("JDSO"), located on Yokota Air Base, Yokota, Japan. Lois Rapp was the Japan District Superintendent, and the appellant's first-line supervisor, as well as the proposing official in this appeal. The Acting Director for DoDEA Pacific, and the deciding official here, was Gael Coyle. The appellant was the Supervisory Education Program Administrator (Assistant Superintendent) for the Japan District.

The appellant was proposed to be removed, and was ultimately demoted, on the basis of one charge of Conduct Unbecoming a Supervisor, with 8 specifications. IAF, Tab 6, p. 58 of 145. A charge of "conduct unbecoming" has no specific elements of proof, but is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). Where, as here, more than one event or specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *See Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 16 (2006), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012).

The Specifications

*Specification No. 1.*

"In August 2015, you held a meeting with your Instructional Support Specialist ('ISS') subordinate employees in which you discussed a DoDEA regulation addressing hostile work environment. During the meeting, you discouraged lawful communication with the

Superintendent and commented that if a subordinate employee made
a complaint to Superintendent Lois Rapp then the subordinate
employee could be disciplined or terminated."

In a sworn declaration, Phillip Ulmer testified that at the first meeting of
Japan District Instructional Support Specialists, he felt threatened by the
appellant suggesting subordinates would be reprimanded or dismissed if they said
anything negative. Agency Exhibit (AX) 4p; IAF, Tab 6, pp. 78-80 of 145. At
the hearing, Mr. Ulmer explained that he felt threatened by her comments and
reference to the regulation,[1] and that he and others interpreted them as a
"warning" that "anything derogatory said about her would not be tolerated," and
that they "better not say anything negative that would make her look bad."
Testimony of Mr. Ulmer.

In his declaration, Michael Pine stated that the appellant indicated in the
meeting that a result of subordinates making reports to Ms. Rapp could be their
termination. AX 4v; IAF, Tab 6, p. 98 of 145. He testified similarly at the
hearing, explaining that, while she initially referred to general office "gossip,"
she had previously told him that others were complaining about her to Mr. Rapp,
and that he thus inferred that her comments at the meeting were "largely about
her," and that there could be "punitive measures attached" for those who
complained about her. Testimony of Mr. Pine. In his declaration, Paul Heino
recalled feeling threatened when the appellant stated she "didn't want anyone
gossiping or bad mouthing her," and that, "you see that it is right here in the
regulation and if you are complaining about the leadership at work or on your

---

[1] It seems to be undisputed that the portion of the regulation in question that the
appellant emphasized was part of a "Schedule of Offenses and Guidelines for Penalties"
that listed the possible disciplinary actions that could be taken for "Making false,
malicious, slanderous, defamatory, or unfounded statements against co-workers,
supervisors, subordinates, or government officials that may/may not damage the
reputation or undermine the authority of those involved." AX 4ee, IAF, Tab 6, p. 138
of 145.

o[w]n time, I will write you up." AX 4t; IAF, Tab 6, pp. 88-90 of 145. At the hearing, Mr. Heino similarly testified that she stated that subordinates should not be speaking about their supervisors, or whispering about them behind their backs, and that she would "write us up" if they broke the regulation. He interpreted it as telling them to quit talking bad about her or she would take disciplinary action. Testimony of Mr. Heino. Davina Perkins testified that the appellant's comments at the meeting in this regard were "surprising," "threatening" and "very intimidating," and created an "atmosphere of fear and uncertainty." Testimony of Ms. Perkins.

The appellant testified that when she first came on board in October of 2014, she noticed that the office was "a gossipy environment." She also stated that, when one of her subordinates, Merilee Cox, returned from maternity leave in June of 2015, she noticed that there were rumors and gossip that another subordinate, Jason Debus, was the father of Ms. Cox's baby, and that Ms. Cox was upset about it and asked her to address it. She said that she referenced the regulation, and told the staff that there could be disciplinary consequences, because she was "trying to promote transparency," and that Ms. Cox afterwards was grateful that the issue had finally been addressed. Testimony of the appellant.

Ms. Cox, however, testified that, while she knew that the appellant knew that Mr. Debus was the father of her baby, she "didn't get the impression that folks were talking about" her and Mr. Debus, that it was the appellant who came to her to tell her that people were talking about them, and that she had no other knowledge of such gossip except from the appellant. Mr. Debus testified that he was at the meeting at which the appellant discussed the regulation. When asked on cross-examination if he and Ms. Cox were "appreciative" that the appellant had done so, he stated, "that's not how that went down," and he denied that Ms. Cox had told him that the appellant was planning to mention the regulation to the staff to "help them." Testimony of Mr. Debus. Further, Lorri Blanchard testified

that the appellant had previously told her that she thought that people were gossiping about her and making her look bad to Ms. Rapp, and that she was therefore going to bring up the regulation about gossip at the next meeting. Testimony of Ms. Blanchard.  In her sworn declaration, Ms. Blanchard related that

> Dr. Hill started a conversation about people being disingenuous.  She said that was how people operated here.  Dr. Hill stated, "People think that they have connections.· Well, I have connections, too. There is a regulation that gossip and slander are not allowed and this has to stop.  People are slandering me to Lois [*i.e.*, Ms. Rapp] and I am just trying to do a good job."  I became uncomfortable and changed the subject.  She brought it back up at lunch.  Dr. Hill said that people talked to me about the Facebook page and that she was sending posts during the duty day.  I asked her about her "unfriending" me and other colleagues on Facebook.  She said that she didn't know her enemies and so she was eliminating those who might be an enemy.  I told her that I missed seeing her writing as she is a good writer.  She then asked me if I knew that there was a picture of the two of us at the Cinco de Mayo celebration taken at the club and it was sent to Lois.  She asked me if I knew who se[n]t it. She told me that in the future if I hear anything like this, I just need to tell them to stop.  I said "OK."  The conversation was awkward. She said that these types of comments hurt her and she was crying.
>
> …
>
> [Later, a]t our opening ISS meeting this August, Dr. Hill had added the DODEA disciplinary regulation as an agenda item.  She stated that our team had an issue with gossip.  She read the regulation aloud and reminded all of us that the consequences of gossip could be disciplinary action.  She told us that we needed to pull ourselves away from the gossip and that it needed to stop.

AX 4x; IAF, Tab 6, pp. 101-103 of 145.  At the hearing, Ms. Blanchard was very clear that the "gossip and slander" the appellant talked about was about herself and had nothing to do with Ms. Cox.  Testimony of Ms. Blanchard.  In light of this wealth of evidence, I find that the clear implication of the appellant's comments at the meeting regarding the regulation was to discourage her subordinates, on threat of discipline, from registering any complaints, or making

any negative comments, about her to her supervisors. I also find the appellant's efforts to explain her comments in this regard as an effort to assist Ms. Cox to be disingenuous. This specification is sustained.

*Specification No. 2.*

" Between April and August 2015, you have also used the term 'enemy' several times in the presence of and when referring to your subordinate employees, and on at least one occasion, you commented you would 'eliminate those who might be an enemy' or words to that effect."

In her sworn declaration, Elise Wiederholt explained that the appellant has often talked to me about a few of her subordinates that she considered her enemy. For example, she believed that Lorri Blanchard was spreading rumors that she and Jason Debus were having an affair. Dr. Hill told me that her plan was to be extra nice to Lorri because it is important to keep your enemies closer. However, I never witnessed Dr. Hill be extra nice to Lorri. It was actually the opposite. Dr. Hill also told me on multiple occasions that she felt Phil Ulmer, Mary Wisdom-Dittmeier, and Leroy Smith were her enemies. She told me that she felt they were trying to bring her down.

There was a time where she believed Mike Pine was talking to Ms. Rapp about her. ... She was always concerned with people talking about her to Ms. Rapp. It was hard to keep up with who Dr. Hill considered her enemy, but the term enemy was used often by her when referring to subordinates.

AX 4j; IAF, Tab 6, pp. 67-8 of 145. Ms. Wiederholt testified very similarly at the hearing, explaining that the appellant "complained to [her] all the time" about many of her subordinates, who were trying to "take her down," and that she often used the word "enemies" to describe them. Testimony of Ms. Wiederholt. As discussed above, Ms. Blanchard, too, stated that the appellant commented with regard to subordinates that she would be "eliminating [*i.e.*, from Facebook] those who might be her enemy." AX 4x; IAF, Tab 6, pp. 101-103 of 145. She testified that the appellant specifically used the word "enemy" several times when referring to her subordinates. Testimony of Ms. Blanchard.

In her pre-action investigation interview, the appellant stated that she did "not recall ever having a conversation like that," and she testified at the hearing that she "never used 'enemy' at all regarding [her] employees." AX 4i; IAF, Tab 6, p. 63 of 145 and testimony of the appellant.    Clear, unequivocal and preponderant evidence establishes otherwise.  This specification is sustained.

*Specification No. 3.*

"In August 2015, you had a discussion with two male ISS subordinate employees in the Japan District Office lab about women's breasts during which you commented that you 'liked your breasts because they were real' or words to that effect."

In his sworn statement, Mr. Heino recalled a conversation about movie stars between him, Leroy Smith, and the appellant that "turned to women's breasts" in which it was remarked: "skinny women do not have large breasts." AX 4t; IAF, Tab 6, p. 89 of 145.  The appellant volunteered the comment: "if they do, they are fake." *Id.*  "She then said that she liked hers the way they were because hers were real.  As soon as she made that comment, I was uncomfortable and left.  I am already on her 'crap' list for whatever reason so I didn't want to say anything." *Id.*    At hearing, he testified that it was a "very casual conversation" regarding a movie star that turned inappropriate when his supervisor mentioned her own breasts.    Testimony of Mr. Heino.    In his declaration, Mr. Smith "was present during the discussion about movie stars and fake breasts when Dr. Hill commented that skinny girls have fake breasts but she likes hers because they are real.  I wasn't paying attention to [the] conversation but did hear that particular part.  I can't imagine that any of the other women in the office would have had that type of conversation."  AX 4y; IAF, Tab 6, p. 106 of 145.  He testified similarly at hearing.  Testimony of Mr. Smith.

During the pre-action interview, the appellant said that she did not recall having this conversation, and that "[t]his feels like retaliation.  I would not say something like this."  AX 4i; IAF, Tab 6, p. 63 of 145.  In her written reply to the proposal notice, she did not specifically address this, or any other, charge.  AX

4d; IAF, Tab 6, pp. 40-53.  At hearing, she denied making any statement about her own breasts, but explained that there was an office conversation about skinny models and movie stars and breast augmentation, and she offered that "it's not only done for vanity, sometimes it's for cancer patients," and mentioned Angelina Jolie, as well as her own aunt, who has cancer.  Testimony of the appellant.  In light of the fact that she did not raise this assertion in her pre-action interview or her written reply, the fact that two different percipient witnesses similarly remembered her contribution to the conversation to be entirely different, and the fact that her demeanor throughout the hearing appeared coy, bromidic and unconvincingly naïve, I find this explanation and, more important, her denial to be unpersuasive.  *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as:  (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence;  (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor).  This specification is sustained.

*Specification No. 4.*

"On or about July 29, 2015, you caressed the face of a male ISS subordinate and commented that the way he grew his beard was 'sexy' or words to that effect."

Craig Maxey testified that, during a discussion among several staff members about "facial stubble," the appellant caressed his stubble with her hand. He related that he was uncomfortable about it, and let her know through his body language and verbally that he did not like it.  He stated that she did not do it

again after that. AX 4s; IAF, Tab 6, p. 86 of 145; testimony of Mr. Maxey. Ms. Perkins corroborated this testimony explaining that the appellant had "rubbed Craig's face, talking about his stubble" and that she had observed that he "was uncomfortable with this." AX 4o; IAF, Tab 6, p. 77 of 145; testimony of Ms. Perkins. Ms. Blanchard also testified to witnessing the appellant "cup" Mr. Maxey's face, and Ms. Cox heard the appellant comment that Mr. Maxey's "beard is so sexy." Testimonies of Ms. Blanchard and Ms. Cox; AX 4x and 4u; IAF, Tab 6, pp. 101 and 94 of 145.

At her oral reply, the appellant did not recall ever touching anyone's beard and, during the pre-action interview, she said she did not recall ever touching Mr. Maxey or any ISS, and that the comment Ms. Cox related "does not sound like something I would say." AX 4c and 4i; IAF, Tab 6, pp. 39 and 63 of 145. At hearing, she stated that she "patted," not "caressed," Mr. Maxey's face, and that he jumped back and said "whoa!" Testimony of the appellant. I find that the preponderant evidence supports this specification.

*Specification No 5.*

"In February 2015 and June 2015, you had conversations in the workplace with ISS subordinate employees about genital piercing."

Mr. Pine and Mr. Debus related that, during a group discussion in the front of the office, the appellant asked where she could get her nails and hair done, as well as a "Brazilian wax."[2] She also stated that "my gays say you can get decorated" after a wax, and Mr. Debus informed her that such decoration was called "va'jazzeling."[3] Mr. Debus explained that he had learned about it on the "Oprah" television show. Testimonies of Mr. Pine and Mr. Debus. *See also* AX

---

[2] Brazilian waxing is the removal of all hair in the pelvic area by applying hot wax. https://en.wikipedia.org/wiki/Bikini_waxing#Brazilian_waxing.

[3] A form of genital decoration, formed by the application of crystal ornaments on the shaved pubic area of a woman. https://en.wikipedia.org/wiki/Vajazzle.

31; IAF, Tab 26, pp. 263-4 of 269 (sworn statement of Mr. Debus). In his sworn statement, Mr. Pine said: "[s]ome of the comments I have heard during her time here are inappropriate as they are often of a sexual nature. For example, her discussion of 'va'jazzeling' (piercing of the genitals) I find inappropriate in the office environment." AX 4v; IAF, Tab 6, p. 97 of 145. Ms. Cox explained that the appellant later recounted to her this conversation with Mr. Debus and Mr. Pine about Brazilian wax and va'jazzeling, and that it made her "very uncomfortable." Testimony of Ms. Cox.

At both her oral reply and the hearing, the appellant denied ever having had a conversation about "genital piercing." AX 4c; IAF, Tab 6, p. 39 of 145; testimony of the appellant. She did testify that she learned the term "va'jazzeling" from Mr. Debus. There seems to be no evidence that the appellant ever raised the topic of, or used the words, "genital piercing," per se. It seems as if the term "genital piercing" may have originated, in this context, in Mr. Pine's sworn statement, or in someone else's misunderstanding of the term "va'jazzeling," which does not pertain to any particular type of piercing. However, for purposes of this specification, I find that this is a distinction without a meaningful difference. The evidence establishes that it was the appellant who, in an office discussion with subordinates, first introduced the concept of waxing and subsequent pubic "decoration," and it is immaterial that it was Mr. Debus who mentioned the term "va'jazzeling." I find that the gravamen of this specification has been established by preponderant evidence. However, even if I were to find that this one specification was not sustained, it would not change my conclusions regarding the overall charge.

*Specification No. 6.*

"On or about July 1, 2015, you discussed the performance evaluation of a subordinate ISS in the public presence of other ISS subordinate colleagues."

In his statement, Mr. Pine related:

[The appellant] met in my pod to discuss my performance appraisal in front of two of my colleagues. She was very aggressive and demeaning with her comments. ... Most items in my appraisal were dismissed as that is just a part of your job, not important. All of the items were discredited. To my knowledge, I do not believe that she did this with the other ISSs, definitely not publicly. After the incident, one of my colleagues apologized to me for witnessing this incident and stated at least you got to be on the pedestal for a little while. I sent Dr. Hill an e-mail stating that this action was inappropriate and brought it up during the final discussion of my performance appraisal. She did apologize and said she didn't pay attention to the fact that there were other people around.

AX 4v; IAF, Tab 6, pp. 97-8 of 145. Mr. Pine testified that the appellant's tone was "pretty aggressive and argumentative," that he was "very uncomfortable" and "physically rattled" by it, and that, within an hour, he sent the appellant an e-mail, stating:

I wanted to inform you that, while I value the evaluation and improvement process and your feedback as my supervisor, I found the discussion of my personal performance openly in a public forum (in the elementary pod) completely unacceptable this morning. I have no problem adding more specificity to my bulleted items or you conferencing with me on the areas in which I need improvement as a precursor to our actual performance appraisal conference, however that discussion is a private one between you and I [*sic*] and should not have taken place in a public area. While the conversation was completely inappropriate in that setting for me, it was equally uncomfortable and inappropriate for my colleagues who were made witness to it. At the minimum it further degrades the morale and cohesiveness of our office, at the maximum it is a potential violation of my rights.

AX 4dd; IAF, Tab 6, p. 116 of 145; testimony of Mr. Pine. He then went to Ms. Rapp to discuss it. He testified that, the next day, he expressed similar sentiments to the appellant personally, and that she apologized to him, which he accepted. Testimony of Mr. Pine. Ms. Perkins testified that the appellant's discussion with Mr. Pine was in "a surprising tone" and was out in the open where others could and did hear, and that it made her "uncomfortable." Testimony of Mr. Perkins. Ms. Blanchard explained that she overheard the conversation and that the appellant's tone was "hostile, aggressive and

demeaning," and that it made her "very uncomfortable." Testimony of Ms. Blanchard.

At her oral reply, the appellant stated that her discussion with Mr. Pine was in a calm tone and that she did not know he was upset until the next day. AX 4c; IAF, Tab 6, p. 39 of 145. At hearing, she stated that she did not discern any issues with the exchange with Mr. Pine, and that, after Mr. Pine came to her the next day, she was "horrified" that she had been the cause of his embarrassment, and she told him that she was "so sorry." Testimony of the appellant. This specification does not refer to any particular type of "tone" in the appellant's comments to Mr. Pine during their discussion, but the preponderant evidence establishes that she did, in fact, inappropriately discuss his performance appraisal in a public setting, within earshot of other subordinates, in a manner that made Mr. Pine and those of his colleagues who overheard it "very uncomfortable." Thus, I find that the specification is sustained.

*Specification No. 7.*

"Between June 2015 and August 2015, you photographed an ISS subordinate employee during the workday and posted the picture on your personal Facebook page. After the ISS asked you to remove the picture from Facebook, you directed another DSO subordinate employee to help you repost the picture."

In her sworn statement, Ms. Cox explained:

Facebook-At one point, she had unfriended me when I was gone. However, since I have returned, she has friended me. I think that it is very inappropriate that she· posts during the duty day. For Lee's farewell, we went to lunch. We were at a Japanese restaurant and I did not have my shoes on. I noticed that she had posted these pictures on Facebook. I was uncomfortable that she posted these pictures. I asked her to take them down and she did not. I did not know what else to say as she is my supervisor.

AX 4u; IAF, Tab 6, p. 94 of 145. She testified similarly at hearing. Testimony of Ms. Cox. In her affidavit, Ms. Wiederholt explained:

Dr. Hill did take the picture down, but later that afternoon Dr. Hill called me into her office and asked me to show her how to repost

> pictures that were hidden from her timeline. I didn't know how to do it, but we eventually figured it out after trial and error. And the picture was then reposted. Dr. Hill proceeded to tell me that Merilee asked her to take down the picture because her bare feet were showing and told me that she thought it was a weird request. I felt uncomfortable with the whole situation.

AX 4j; IAF, Tab 6, p. 68 of 145.   She testified similarly at the hearing. Testimony of Ms. Wiederholt.   The appellant's account of the matter is similar, except she testified that, while she asked Ms. Wiederholt for help in re-posting the picture, they were unsuccessful in doing so.   Testimony of the appellant.   I find that simple denial to be outweighed by Ms. Wiederholt's specific recollection that the photo was, indeed, re-posted, and Ms. Cox's assertion that the photo was still on the appellant's Facebook page after she asked her to take it down.   *Hillen, supra.*   I find that preponderant evidence supports this specification.

*Specification No. 8.*

> "Between June 2015 and August 2015, you told an ISS subordinate employee in the workplace that you had a Brazilian wax of your genital area and that you had taken nude photographs of yourself to exchange with a man with whom you were having an extramarital relationship or words to that effect."

In a sworn statement of September 24, 2015, Ms. Cox wrote:

> Over the summer, Dr. Hill told me that following a Brazilian wax of her genital area, she had taken nude photos of herself to exchange with a man that she was having an extramarital relationship with. She told me that her husband had discovered the nude photos that she had taken when their shared iCloud space had been synced. At that time, she said that she tried to convince her husband that the photos were taken for him. She said that her husband remained suspicious of that and started taking measures to monitor her photos, email accounts, and whereabouts using various features of her iPhone. As she was not willing to stop the relationship with this individual at the time her husband became increasingly suspicious, she told me that she had begun communicating with him using her DoDEA Blackberry. I did witness her corresponding with the individual that she was having the extramarital relationship with using her Blackberry. … . I tried to warn her that I thought that it was a very

bad idea to be exchanging personal communications of any kind with this man using government equipment.

AX 4u; IAF, Tab 6, p. 96 of 145.  Ms. Cox testified at the hearing that the appellant told her she had sent photos of her waxing to someone not her husband. Testimony of Ms. Cox.  In a sworn statement, Mr. Debus recounted numerous inappropriately personal and intimate topics the appellant discussed with him, including "[h]ow to delete and hide email on her iPhone so that her husband...could not have access to nude pictures on her iCloud she sent to various men she met online," and "[s]he told me that [her husband] discovered the nude pictures and she lied to him and said they were a 'surprise' for him." AX 31; IAF, Tab 26, pp. 263-4 of 269.

The appellant testified that she was "stunned" and "horrified" when she first heard of this allegation, and that she did not know why Ms. Cox would make such a statement.  She did say, however, that she believed she did "share" with Ms. Cox about waxes.  Testimony of the appellant.  At the hearing, I found Ms. Cox, like all of the agency's witnesses, to be cogent, straightforward, articulate and entirely credible.  I also find it not believable, as suggested by the appellant, that Ms. Cox, and ten other witnesses, would fabricate their internally consistent testimonies because they were somehow manipulated into doing so by Ms. Rapp. On the other hand, as mentioned above, I found the appellant's testimony to be unconvincingly naïve, and that her protestations of innocent surprise whenever anything negative about her was raised to be excessively smooth and quite disingenuous.  *Hillen, supra.*  I find that this specification, as supported by Ms. Cox's statement and testimony, Mr. Debus's statement, and at least in part by the appellant's acknowledgment that she shared personal information regarding waxes, to be more likely true than not, and is sustained.

In sum, I find that the appellant's assertion that all of the many subordinate employees who testified and/or provided detailed and consistent sworn statements were somehow intentionally and maliciously manipulated into doing so by Ms.

Rapp is thoroughly unavailing. Testimony of the appellant. Having found all of the agency's specifications to be supported, I also find that the charge of Conduct Unbecoming a Supervisor to be sustained.

Due Process Violation[4]

The appellant alleges that she was not provided with all the information considered by the deciding official when rendering her decision, thus depriving her of her due process rights to be able to respond to that information. Specifically, she alludes to ex parte communications between Ms. Cox and the proposing and deciding officials.

The appellant has the right to notice of the charges against her and an opportunity to present her side of the story before being removed. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546 (1985); *Arrington v. Department of the Navy,* 117 M.S.P.R. 301 (2012). Because of that right, the deciding official is not allowed to consider -- either in connection with the charge itself or the penalty -- new and material information that he obtained ex parte. *Ward v. U.S. Postal Service,* 634 F.3d 1274, 1280 (Fed. Cir. 2011); *Stone v. Federal Deposit Insurance Corporation,* 179 F.3d 1368, 1377 (Fed. Cir. 1999). Information that the deciding official knew from personal experience is considered ex parte if the appellant was not informed that it would be taken into account. *Lopes v. Department of the Navy,* 116 M.S.P.R. 470 (2011). In determining whether a deciding official's consideration of information obtained ex parte violates due process, the question is whether the information is "so

---

[4] On March 31, 2016, the appellant withdrew her affirmative defenses regarding discrimination and retaliation. IAF, Tab 32. Also, during the prehearing conference, the appellant's representative acknowledged that his harmful procedural error allegation was based on the same operative facts as his due process claim. Insofar as it was also based on allegations that the agency did not support its charges with sufficient evidence, such allegation goes to the merits of the charges and the agency's burden of proof of them, but does not constitute a harmful procedural error argument. IAF, Tab 31.

substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Stone*, 179 F.3d at 1377. Relevant factors include (1) whether the ex parte communication merely introduces cumulative information or new information; (2) whether the employee knew of the information and had a chance to respond to it; and (3) whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Id.* A due process violation requires automatic reversal regardless of whether the error likely affected the agency's decision. *Id.*

Here, the appellant asserts that Ms. Coyle, the deciding official,[5] had improper conversations with Ms. Rapp, the proposing official, and Ms. Cox regarding matters that related to statements made by the appellant during her oral presentation. It is unclear what those objectionable conversations were, however. At most, it appears that, around the time between the proposal and decision in this case, Ms. Cox revealed to Ms. Coyle and Ms. Rapp that Mr. Debus was the father of her new baby. Testimonies of Ms. Coyle, Ms. Rapp and Ms. Cox. Any such communication would, of course, be irrelevant to the charge in this case. The appellant also seems to imply that Ms. Cox's supplemental statement, dated September 24, 2015 – which formed the basis of Specification No. 8 – was somehow an impermissible ex parte communication. Ms. Cox testified that Ms. Rapp asked her if she knew anything about inappropriate photographs taken by, or of, the appellant, and that, because she had some such information, she put it in that supplemental statement. Testimonies of Ms. Cox and Ms. Rapp.[6] That

---

[5] It is undisputed that the appellant requested Ms. Coyle's recusal from acting as the deciding official, but that request was denied.

[6] In his closing brief, the appellant's representative states that "Dr. Coyle was also in a conflict of interest position because of her close, near familial relationship with Ms. Cox, a witness in the case. ... Dr. Coyle purportedly dismissed the eighth and final charge because of her conflict. However, during the hearing she denied what she

information was incorporated in the proposal letter to which the appellant had a full opportunity to respond. I find that there is no evidence of any improper ex parte communication between the deciding official and anyone else, and that the appellant, therefore, has not proven this claim.

### Nexus and Penalty

In her decision letter, Ms. Coyle stated:

> I find that this misconduct fully supports a charge of conduct unbecoming a supervisor because it demonstrates substantially poor judgment and disregard for the critical responsibilities of a supervisor. Your misconduct disrupted the operations of the workplace and undermined the effectiveness of the professional educators who you were entrusted to lead.

AX 4b; IAF, Tab 6, p. 35 of 145. This conclusion is amply supported by the testimonies and sworn statements of the appellant's many subordinates. Accordingly, I find that the sustained charge of Conduct Unbecoming a Supervisor bears a nexus to the efficiency of the service. *See also Batten v. U.S. Postal Service*, 101 M.S.P.R. 222, 228 (2006); *Alberto v. Department of Veterans Affairs*, 98 M.S.P.R. 50 (2004); *Luongo v. Department of Justice*, 95 M.S.P.R. 643 (2004).

As for the agency's selected penalty, Ms. Coyle advised the appellant that she had

> considered the nature and seriousness of the offense and its relation to your duties, position and responsibilities, including whether the offense was intentional, or frequently repeated, and your job level and type of employment. As Assistant Superintendent, you hold a special supervisory position of leadership, prominence and trust. Your misconduct was deliberate and especially serious when directed toward employees you supervised. You knew, or clearly should have

---

previously stated under oath during her deposition," citing a portion of Ms. Coyle's deposition. IAF, Tab 39, pp. 27-8 of 35. This is a clear mis-reading of that deposition testimony, however, and there is no evidence, much less preponderant evidence, that Ms. Coyle's impartiality or the appellant's due process rights were in any way compromised by any personal relationship between Ms. Coyle and Ms. Cox.

known, for example that referring to your subordinate employees as enemies, publically discussing performance, touching subordinate employees, and conversing about intimate matters in the workplace all are inappropriate conduct for a manager in a leading supervisory position. Your actions give me no confidence that you can continue in a position that either supervises or collaborates daily with instructional systems specialists. Your work history, however, reflects several years of successful Federal service in education with no prior discipline other than the recent August 26, 2015 Letter of Reprimand. Therefore, upon full consideration of the "Douglas Factors," including your years of prior successful educator service, I have decided to mitigate the penalty of removal to a demotion and find that this will promote the efficiency of the service.

AX 4b; IAF, Tab 6, pp. 35-6 of 145. Ms. Coyle testified similarly. Testimony of Ms. Coyle. The appellant contends that more progressive discipline should have been utilized, and that she was shocked and surprised by the nature and number of the allegations against her. Testimony of the appellant. While, as discussed, I found the appellant's testimony to be largely not credible, I do not believe that the question of whether her misconduct was intentional is particularly significant in this case when assessing a penalty. It is clear that her subordinates had expressed to her their displeasure with several aspects of her behavior, as discussed above, and Ms. Rapp testified that she had told her that some of them had expressed discomfort with the amount of time she spent posting on Facebook[7] and talking with Mr. Debus, and that she had told her that they "live in a fishbowl" and counseled her about "creating divisions in the office" and "separating her personal and business life." Testimony of Ms. Rapp.

Further, the inappropriateness of the charged conduct is plain. As Ms. Coyle noted: "Once you get to that level, you have to know that such behavior is inappropriate." Testimony of Ms. Coyle. As Ms. Cox wrote: "She doesn't seem

---

[7] Indeed, Ms. Rapp's supervisor had sent her numerous Facebook postings the appellant had made during duty hours, and Mr. Rapp then asked the appellant to refrain from doing so. Testimony of Mr. Rapp; IAF, Tab 26, p. 182 of 269.

to understand that she is the boss and not just one of the team members…I am not sure how she can repair this right now. She does not understand how deeply she has offended much of the team…I don't know how she can be so naïve to think that everything is OK." AX 4u; IAF, Tab 6, p. 93 of 145. Thus, whether the appellant's inability to maintain proper boundaries was naïve or, as Ms. Rapp termed it, "entitled and tone-deaf," it is clear that it disqualified her as a supervisor, and rendered her a poor candidate for rehabilitation.

In light of the foregoing, I find that Ms. Coyle's belief that the appellant could not be in a job requiring her to lead and supervise people is well founded. Accordingly, I agree that a suspension would not be productive, and that her decision to demote the appellant to a non-supervisory position was well within the bounds of reasonableness under all the circumstances of this case. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981)(The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness).

## DECISION

The agency's action is AFFIRMED.

FOR THE BOARD:

Anthony L. Ellison
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **September 26, 2016**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after

the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition or cross petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov).

### Criteria for Granting a Petition or Cross Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition or cross petition for review. Situations in

which the Board may grant a petition or cross petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), a petition for review, a cross petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words, whichever is less. A reply to a response to a petition for review is limited to 15 pages or 3750 words, whichever is less. Computer generated and typed pleadings must use no less than 12 point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of

authorities, attachments, and certificate of service. A request for leave to file a pleading that exceeds the limitations prescribed in this paragraph must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length. Typically, a well-written petition for review is between 5 and 10 pages long.

If you file a petition or cross petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. A petition for review must be filed with the Clerk of the Board no later than the date this initial decision becomes final, or if this initial decision is received by you or your representative more than 5 days after the date of issuance, 30 days after the date you or your representative actually received the initial decision, whichever was first. If you claim that you and your representative both received this decision more than 5 days after its issuance, you have the burden to prove to the Board the earlier date of receipt. You must also show that any delay in receiving the initial decision was not due to the deliberate evasion of receipt. You may meet your burden by filing evidence and argument, sworn or under penalty of perjury (*see* 5 C.F.R. Part 1201, Appendix 4) to support your claim. The date of filing by mail is determined by the postmark date. The date of filing by fax or by electronic filing is the date of submission. The date of filing by personal delivery is the date on which the Board receives the document. The date of filing by commercial delivery is the date the document was delivered to the commercial delivery service. Your petition may be rejected and returned to you if you fail to provide a statement of how you served your petition on the other party. *See* 5 C.F.R. § 1201.4(j). If the petition is filed electronically, the online process itself will serve the petition on other e-filers. *See* 5 C.F.R. § 1201.14(j)(1).

A cross petition for review must be filed within 25 days after the date of service of the petition for review.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date this initial decision becomes final.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and

Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, that is, representation at no cost to you, the Federal Circuit Bar Association may be able to assist you in finding an attorney.  To find out more, please click on this link or paste it into the address bar on your browser:

https://fedcirbar.org/Pro-Bono-Scholarships/Government-Employees-Pro-Bono/Overview-FAQ

The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

Appellant

Electronic Mail
Christine L. Hill
210 Captains Lane
Newport News, VA 23602

Electronic Mail
Christine L. Hill
c/o Chartmans Inc.
50 Immigration, Suite 100
Charleston, SC 29403

Appellant Representative

Electronic Mail
Bradley R. Marshall
50 Immigration Street, Suite 100
Charleston, SC 29403

Agency Representative

Electronic Mail
Douglas W. Frison, Esq.
Department of Defense
District Superintendent's Office
Unit 15549
APO-AP, AP 96205-5549

August 22, 2016
(Date)

Pamela Paragas
Paralegal Specialist

# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHRISTINE L. HILL,

             Appellant,

      v.

DEPARTMENT OF DEFENSE,

             Agency.

DOCKET NUMBER
SF-0752-16-0127-I-1

DATE: April 13, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bradley R. Marshall, Charleston, South Carolina, for the appellant.

Jennifer Kehe, APO, AP, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency's action demoting her for eight specifications of conduct unbecoming a supervisor. Generally, we grant petitions such as this one only in

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the appellant failed to establish any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review.  Except as expressly MODIFIED by this Final Order to decide a due process issue raised below but not addressed in the initial decision, we AFFIRM the initial decision.

¶2      The appellant filed this appeal of the agency's action demoting her from the position of Supervisory Education Program Administrator (Assistant Superintendent) with the Department of Defense Education Activity (DODEA), Department of Defense Dependents Schools, at Yokota Air Base, Japan, to the position of Teacher at Fort Bragg, North Carolina, effective November 20, 2015.[3] Initial Appeal File (IAF), Tab 1 at 2-3.  The appellant reported directly to the Japan District Superintendent, who is the proposing official in this appeal.  IAF, Tab 6 at 58-61.  The deciding official was the Acting Director for DODEA Pacific.  *Id.* at 38.

¶3      The Japan District Superintendent proposed the appellant's removal based on eight specifications of conduct unbecoming a supervisor.  *Id.* at 58-59.  The specifications arose from several encounters between the appellant and

---

[3] The agency subsequently removed the appellant, and the appellant challenged her removal in a separate appeal.  *Hill v. Department of Defense*, MSPB Docket No. DC-0752-16-0744-I-2, Final Order (Feb. 21, 2023).

subordinate employees, in which she allegedly made inappropriate statements and took questionable actions.  *Id.*  The Acting Director for DODEA Pacific mitigated the penalty to a demotion, and the appellant filed this appeal.  *Id.* at 35-36.  After a hearing, the administrative judge issued an initial decision affirming the demotion.  IAF, Tab 41, Initial Decision (ID) at 1, 19.  The administrative judge sustained all specifications of the charge.  ID at 2-15.  He also found no evidence of any improper ex parte communication between one of the witnesses, the proposing official, and the deciding official, as the appellant alleged.[4]  ID at 15-17.  The administrative judge found that the charge bore a nexus to the efficiency of the service and that the demotion fell within the bounds of reasonableness.  ID at 17-19.

¶4     The appellant has filed a petition for review, and the agency has filed in opposition, to which the appellant has replied.  Petition for Review (PFR) File, Tabs 5, 7-8.

<u>The administrative judge properly assessed whether witnesses testified credibly.</u>

¶5     The appellant contends that the administrative judge made erroneous assessments of witness credibility.  PFR File, Tab 5 at 25-26.  She asserts that the administrative judge failed to explain his credibility assessments, specifically when he credited the testimony of agency witnesses over her own testimony.  *Id.* at 26.     The Board defers to the administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so.  *Haebe v. Department of Justice*, <u>288 F.3d 1288</u>, 1301 (Fed. Cir. 2002).  Sufficiently sound reasons include findings that are incomplete, inconsistent with

---

[4] The appellant also originally alleged age and sex discrimination, disparate treatment, and retaliation for prior equal employment opportunity activities.  IAF, Tab 1 at 16-18, Tab 24 at 10-11, Tab 31 at 2-4.  She later withdrew those claims.  IAF, Tab 32; ID at 15 n.4.

the weight of the evidence, and do not reflect the record as a whole. *Faucher v. Department of the Air Force*, 96 M.S.P.R. 203, ¶ 8 (2004).

¶6        We find that the initial decision reflects that the administrative judge identified the factual questions in dispute, summarized the evidence on each disputed question, stated which version he believed, and explained in detail why he found the chosen version more credible, considering all of the relevant factors, including the witnesses' demeanor. *See Hillen*, 35 M.S.P.R. at 458. Accordingly, we find no reason to disturb his well-explained conclusions on credibility.[5]

The appellant failed to show that the agency did not prove the charge.

¶7        The appellant argues that the agency failed to prove the charge, and that her proven conduct was neither improper, nor detracted from her character or reputation as a supervisor. PFR File, Tab 5 at 21. A charge of "conduct

---

[5] The appellant asserts that she was denied the opportunity to present witnesses who supported her account of events and whose testimony would refute the testimony of the agency witnesses. PFR File, Tab 5 at 26. However, the record does not indicate that she lodged any objection to the administrative judge's exclusion of the witnesses she identified to testify. IAF, Tab 24 at 12-13, Tab 31 at 1; *see Warren v. Department of Defense*, 87 M.S.P.R. 426, ¶ 8 (2001) (holding that an appellant's claim that an administrative judge improperly limited her witness list was not properly before the Board when the appellant did not object below to the administrative judge's rulings on witnesses).

The appellant additionally asserts that the administrative judge "allowed agency witnesses to make statements unrelated to the charges and not offered at the time of their extensive depositions" and that the hearing testimony of these witnesses differed from the sworn statements and depositions they gave. PFR File, Tab 5 at 14. We find these arguments unavailing. Although she identifies the inconsistencies she believes existed regarding the testimony of various witnesses, *id.* at 15-21, she has not shown that she was denied the opportunity to impeach these witnesses during the hearing, and the initial decision makes clear that she testified extensively regarding each charge. The administrative judge simply found the appellant's testimony to be less credible than that of the other witnesses.

In a similar vein, the appellant included a deposition given by the agency's Chief of Labor Management and Employee Relations in her reply to the agency's response to the petition for review. PFR File, Tab 8 at 5 n.1, 11-115. She explains that the administrative judge struck such transcripts from the record, and she argues that "particular attention should be given" to this deposition. *Id.* at 5 n.1. She did not, however, explain *why* the deposition is relevant to the issues raised on appeal.

unbecoming" has no specific elements of proof but is established by proving that the employee committed the acts alleged in support of the broad label. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 9 (2010). When, as here, more than one event or specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge. *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 16 (2006), *aff'd*, 626 F. Supp. 2d 1140 (D.N.M. 2009), *aff'd*, 490 F. App'x 932 (10th Cir. 2012).

¶8    Here, the agency successfully demonstrated that the appellant engaged in the conduct it alleged in support of the charge and that such conduct was improper or unsuitable for a supervisory employee. The appellant's attempt to trivialize the impact of her misconduct does not change the fact that she admitted to or did not deny that misconduct. *See Chavez v. Small Business Administration*, 121 M.S.P.R. 168, ¶ 5 (2014) (finding that an appellant's admission can support an agency's charge of misconduct). Her argument is thus unavailing.

The appellant has not shown that the agency committed harmful error.

¶9    The appellant asserts that the charges filed against her were too stale to support an adverse action. PFR File, Tab 5 at 9-11. She argues that the agency did not investigate the allegations against her for "months" after the actions she was alleged to have committed. *Id.* at 9. She asks the Board to remand her appeal for a determination pursuant to *Heffron v. United States*, 405 F.2d 1307, 1311 (Ct. Cl. 1969), as to whether she was prejudiced by a delay in bringing the charges. PFR File, Tab 5 at 10-11.

¶10    This argument appears to be newly raised on review. The appellant did not discuss the issue in her prehearing statement, nor did the administrative judge include it in the summary of the telephonic prehearing conference. IAF, Tab 24 at 10-12, Tab 31 at 1-5. The Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence.

*Banks v. Department of the Air Force*, [4 M.S.P.R. 268](#), 271 (1980).  The appellant has not offered any such evidence.  She also has not shown that an unreasonable period of time elapsed before the agency brought a charge against her, much less that a delay in bringing the charge likely caused the agency to reach a different conclusion.  *See Stephen v. Department of the Air Force*, [47 M.S.P.R. 672](#), 681 (1991) (holding that reversal of an action for harmful error is warranted where the procedural error likely had a harmful effect upon the outcome of the case before the agency).  The events leading to the appellant's demotion occurred between June and August 2015, and the notice of proposed removal was issued on October 6, 2015.  IAF, Tab 6 at 58-59.

¶11      The appellant also argues that the agency investigation was faulty.  PFR File, Tab 5 at 11-12.  She asserts that the District Superintendent should not have been allowed to serve both as investigator and proposing official.  *Id.*  She alleges that the District Superintendent conducted the investigation "by soliciting subordinate employees to offer any negative statements about [her] under the guise of a 'hostile work environment' claim," even though no such claim was filed with the agency's equal employment opportunity (EEO) office.  *Id.* at 11.  She further alleges that the District Superintendent manipulated these employees to solicit negative information, even convincing an employee with whom the District Superintendent had a close relationship to supplement a prior statement regarding the appellant's conduct.  *Id.* at 11-12 & n.2.  The appellant also alleges that the District Superintendent fabricated the allegations set forth in the eighth specification regarding the alleged extramarital affair.  *Id.*; IAF, Tab 6 at 59.

¶12      The appellant, however, has offered no authority supporting the proposition that the agency's investigator and proposing official must be different persons, or that any information developed in an investigation of a hostile work environment must be submitted to the agency's EEO officials.  As for her assertion that the proposing official manipulated agency witnesses to provide unfavorable testimony, the appellant has offered no evidence that proves her allegation.

Conversely, the administrative judge directly addressed this matter when he found that more than 10 agency witnesses had given credible and consistent testimony that bore no indicia of fabrication.  ID at 14.

<u>The appellant has not shown that the agency violated her right to due process.</u>

¶13      The appellant argues that the specifications set forth in the proposal notice lack clarity and did not provide a basis by which she could refute the agency's claims.  PFR File, Tab 5 at 9, 12-13.  She explains that the specifications do not set forth specific dates, times, and places of her alleged misconduct or identify the persons who were present.  *Id.* at 12-13.  The lack of detailed notice, she explains, caused the proceedings to be fundamentally unfair and abridged her right to be heard.  *Id.* at 13; *see Barresi v. U.S. Postal Service*, <u>65 M.S.P.R. 656</u>, 666 (1994) (stating that due process mandates that notice be sufficiently detailed to provide a meaningful opportunity to be heard) (citing *Goldberg v. Kelly*, <u>397 U.S. 254</u>, 267-68 (1970)).

¶14      The appellant asserted these issues below, IAF, Tab 21 at 12-15, but they were not addressed in the initial decision.  We do so now and find that the notice of proposed removal set forth an adequate basis for the appellant to refute the agency's claims.[6]  Although the proposal notice did not in all cases identify specific dates or audience members, it is sufficiently specific for the appellant to have called to mind the incidents upon which it is based and to understand the agency's objections to her behavior.  IAF, Tab 6 at 58-59.

---

[6] The appellant further asserts that the agency did not explain how the charged conduct violated any law.  PFR File, Tab 5 at 13.  However, an agency may demote an employee for "such cause as will promote the efficiency of the service," a standard which is not limited to conduct that violates a statute, rule, or regulation.  <u>5 U.S.C. § 7513</u>(a); *cf. Fontes v. Department of Transportation*, <u>51 M.S.P.R. 655</u>, 662-63 (1991) (holding that there is no requirement that an employee must violate a specific written policy before he can be disciplined under chapter 75 because the sole criterion under that chapter is that the adverse action be "for such cause as will promote the efficiency of the service").

¶15       The appellant also alleges that, after she gave her oral response to the charge, an ex parte meeting occurred between the deciding official, the proposing official, and one of the appellant's subordinates. PFR File, Tab 5 at 21-23. The appellant alleges that, in her response, she revealed the existence of an extramarital affair between the subordinate and her coworker, and that she believed the relationship adversely affected the work environment. *Id.* at 21. The deciding official testified that she contacted both the proposing official and the subordinate regarding the appellant's allegations about the affair. *Id.* at 21-22; Hearing Compact Disc (HCD) (testimony of the deciding official). The appellant argues that the meeting was an ex parte communication within the meaning of *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), and thus it denied her right to due process. PFR File, Tab 5 at 22-23.

¶16       An appellant has the right to notice of the charges against her and an opportunity to present her side of the story before an agency takes disciplinary action. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985); *Arrington v. Department of the Navy*, 117 M.S.P.R. 301, ¶ 16 (2012). Because of that right, the deciding official is not allowed to consider—either in connection with the charge itself or the penalty—new and material information that she obtained ex parte. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011); *Stone*, 179 F.3d at 1376-77. Information that the deciding official knew from personal experience is considered ex parte information if the appellant was not informed that it would be considered. *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶¶ 5-6, 10 (2011). In determining whether a deciding official's consideration of information obtained ex parte violates due process, the Board will consider whether the information is "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Stone*, 179 F.3d at 1377; *Lopes*, 116 M.S.P.R. 470, ¶ 7. Relevant factors in making that determination include (1) whether the ex parte communication merely introduces cumulative

information or new information, (2) whether the employee knew of the information and had a chance to respond to it, and (3) whether the ex parte communication was of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377. A due process violation requires automatic reversal regardless of whether the error likely affected the agency's decision. *Id.*

¶17    The administrative judge learned from the testimony of the subordinate, the deciding official, and the proposing official that the subordinate told the deciding and proposing officials that her coworker was the father of her new baby during the time that elapsed between issuance of the proposal notice and the agency's decision to demote the appellant. ID at 16; HCD (testimony of the subordinate, the deciding official, and the proposing official). The administrative judge found, however, that such communication was irrelevant to the charge. ID at 16; *see Villareal v. Bureau of Prisons*, 901 F.3d 1361, 1365-66 (Fed. Cir. 2018) (finding no due process violation, in part, because the deciding official did not rely on the ex parte information when making his decision on the removal).

¶18    The appellant also asserts that the subordinate's September 24, 2015 supplemental statement, which was part of the underlying evidence for Specification No. 8, was based upon or was itself an impermissible ex parte communication.[7] PFR File, Tab 5 at 11; IAF, Tab 6 at 96. The subordinate testified that the proposing official asked her if she knew anything about inappropriate photographs taken by, or of, the appellant, and she offered the information set forth in the supplemental statement. HCD (testimony of the subordinate and the proposing official). The information in the supplemental

---

[7] The appellant asserts that the testimony of the proposing official and the subordinate conflicted regarding which of the two women had initiated the subordinate's supplemental statement. PFR File, Tab 5 at 24-25. She asserts that one of these witnesses may have committed perjury. *Id.* Any inconsistency in the testimony, however, was not relevant to the issue of whether improper ex parte communication occurred.

statement, however, was incorporated in the proposal notice, and the appellant had a full opportunity to respond to that notice.  IAF, Tab 6 at 39-52, 59-60. Accordingly, we find no evidence of any improper ex parte communication between the deciding official and other persons, and likewise, we find that the appellant failed to establish a violation of her due process rights.[8]

<u>The deciding official properly considered and applied the *Douglas* factors.</u>

¶19    The appellant contends that the administrative judge erred when he found that the deciding official had properly considered and applied the *Douglas* factors.    PFR File, Tab 5 at 26-29; ID at 17-19; *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

¶20    The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness.  *Douglas*, 5 M.S.P.R. at 306.  If the Board sustains an agency's charges, it will defer to the agency's penalty determination unless the penalty exceeds the range of allowable punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.  *Saiz v. Department of the Navy*, 122 M.S.P.R. 521, ¶ 5 (2015).  The Board will defer to the employing agency because it has primary discretion in maintaining employee discipline and efficiency.  *Id.*  The Board will not displace management's responsibility but instead will ensure the agency has properly exercised its managerial judgment.  *Id.*

---

[8]  Likewise, the appellant has not shown that these communications between the deciding official and other persons constituted harmful error.  *Ward*, 634 F.3d at 1281. The appellant has not shown that it was an error for a personal conversation pertaining only to the subordinate and her coworker to have occurred, nor did she show how such a conversation would have caused the agency to reach a conclusion different from the one it would have otherwise reached in the absence or cure of the error.  *Stephen*, 47 M.S.P.R. at 681, 685.

¶21        As set forth in the initial decision, the deciding official considered the nature and seriousness of the offense and its relation to the appellant's duties, position, and responsibilities, including whether the offense was intentional or frequently repeated, her job level, and the type of employment. IAF, Tab 6 at 35; ID at 17-19. The deciding official considered that the appellant held a special supervisory position of leadership, prominence and trust, and that her misconduct was deliberate, directed toward subordinate employees, and generally inappropriate in the workplace. IAF, Tab 6 at 35-36. The administrative judge found that her concerns about the appellant's retention in a leadership or supervisory position were "well founded." ID at 19. Nevertheless, in light of the appellant's successful employment history with the agency and the lack of prior discipline except for the letter of reprimand, the deciding official mitigated the proposed penalty of removal to demotion. IAF, Tab 6 at 36.

¶22        The appellant's arguments on review fail to persuade us that her demotion exceeds the bounds of reasonableness. Although on review the appellant argues that the deciding official failed to consider an additional mitigating factor, her personal circumstances including "marital struggles," PFR File, Tab 5 at 26, she did not directly raise these issues as a mitigating factor in her reply to the deciding official, IAF, Tab 6 at 48-50; *see Yeschick v. Department of Transportation*, 801 F.2d 383, 385 (Fed. Cir. 1986) (holding that neither the agency nor the Board can be held to account for failing to consider factors not identified by the appellant as significant). Further, we would reach the same conclusion even if we were to reweigh the penalty in light of that factor. We would give far greater weight to other factors, including the nature and seriousness of the offense, and its relation to the appellant's duties, role, and responsibilities as a supervisor and educational leader. We have considered the appellant's arguments about the deciding official's alleged improper management of her, PFR File, Tab 5 at 28; however, we agree with the administrative judge's finding that the agency's penalty is within the bounds of reasonableness, ID

at 17-19.  We additionally find that the appellant offered no authority in support of her argument that the agency retaliated against her by changing her duties and conditions of employment during the period that followed her receipt of the proposal notice.  PFR File, Tab 5 at 28.  In fact, we find the proposing official's actions reasonable, given the appellant's well-documented misconduct that went to the heart of her role as a supervisor and leader.

The administrative judge did not abuse his discretion on discovery matters.

¶23     The appellant contends that the administrative judge abused his discretion by denying her motions to compel and for sanctions.  PFR File, Tab 5 at 23-25; IAF, Tabs 13, 18.  The Board's regulations grant the administrative judge broad discretion in managing appeals.  *See* 5 C.F.R. § 1201.41(b).  The Board will not reverse an administrative judge's rulings on discovery matters absent an abuse of discretion.  *Wagner v. Environmental Protection Agency*, 54 M.S.P.R. 447, 452 (1992), *aff'd*, 996 F.2d 1236 (Fed. Cir. 1993) (Table).  On January 25, 2016, the appellant filed a motion for an extension of time in which to conduct depositions and to compel full and complete discovery responses.  IAF, Tab 13.  On February 4, 2016, the administrative judge granted the appellant's motion to compel for her first request for production and suspended case processing to allow additional time for discovery or settlement.  IAF, Tab 16.  The administrative judge did not rule on the motion to compel regarding the appellant's second request for discovery because she had not submitted a copy of the discovery request with the motion.  *Id.* at 1.  On February 17, 2016, the appellant filed another motion to compel for the second request for discovery and for sanctions.  IAF, Tab 18.  Therein, she  asserted that sanctions were in order because the agency representative disrupted the deposition of the proposing official "with repeated objections, comments, attempts to shape his client's testimony, and forcing the deposition to be ended before the time needed to conduct an examination and allowed by MSPB law."  *Id.* at 12.  The appellant alleged that he behaved similarly at other depositions.  *Id.*  Although the appellant

alleges on review that the administrative judge flatly denied her motions, PFR File, Tab 5 at 23, the record shows otherwise, IAF, Tab 16, Tab 31 at 6.  The administrative judge even allowed the appellant to continue deposing the proposing official, although her representative had been the one to end the deposition prematurely.  IAF, Tab 31 at 6.  We thus find that the administrative judge did not abuse his discretion in handling these discovery matters.

<u>The Board will not award sanctions against the agency.</u>

¶24    The appellant alleges that the agency representative engaged in egregious misconduct during the proceedings by disparaging her representative.  PFR File, Tab 5 at 24, Tab 8.  The appellant requests that the Board sanction the agency and refer her case to the Office of Special Counsel for purposes of investigating the agency representative's conduct "during closing argument and in the proceedings."  *Id.* at 24.  The appellant, however, did not identify in detail any specific examples of the offensive comments and conduct she alleges occurred, even in her reply to the agency's response, which specifically addresses her request for sanctions.  PFR File, Tab 8.  As we have explained above, the administrative judge acted within his sound discretion in his consideration of the appellant's request for sanctions.  IAF, Tab 18, Tab 31 at 6.  For all of these reasons, we thus affirm the initial decision as modified.

### NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1)** __**Judicial review in general**__.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be __received__ by the court within **60 calendar days** of __the date of issuance__ of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. [5 U.S.C. § 7702](b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under [5 U.S.C. § 2302](b)(8) or other protected activities listed in [5 U.S.C. § 2302](b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must <u>receive</u> your

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on

petition for review within **60 days** of <u>the date of issuance</u> of this decision. <u>5 U.S.C. § 7703</u>(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:

                    /s/ for
_____

                  Jennifer Everling
                  Acting Clerk of the Board

Washington, D.C.

CERTIFICATE OF SERVICE

I certify that this Order was sent today to each of the following:


Electronic Mail          Bradley R. Marshall
                         50 Immigration Street, Suite 100
                         Charleston, SC 29403

Electronic Mail          Christine L. Hill
                         210 Captains Lane
                         Newport News, VA 23602

Electronic Mail          Jennifer Kehe
                         Department of Defense
                         DoDEA Pacific
                         Unit 35007
                         APO, AP 96376-5007


| April 13, 2023 | /s/ |
|----------------|-----|
| (Date) | Dinh Chung |
| | Case Management Specialist |